**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,    ) | |
|         ) | |
|      Plaintiff,    ) | |
|         ) | |
|   vs.    ) | |
|         )   NO. 2:16-cv-00142 | |
| MCCOLLY REALTORS, INC.,    ) | |
| RUTH LOCKHART, and    ) | |
| ROSEMARY PURNELL, AS    ) | |
| ADMINSTRATRIX OF THE ESTATE OF    ) | |
| KENNETHA PURNELL, DECEASED,    ) | |
|         ) | |
|      Defendants.    ) | |

## OPINION AND ORDER

This matter is before the Court on Allstate Insurance
Company's ("Allstate") Motion for Summary Judgment, filed on April
7, 2017 (DE #26), and Cross Motion for Summary Judgment by McColly
Realtors, Inc. and Ruth Lockhart filed on May 19, 2017 (DE #30).
For the reasons set forth below, Allstate's motion for summary
judgment (DE #26) is **GRANTED.** Defendants' cross motion for summary
judgment (DE #30) is **DENIED.** The Clerk of the Court is **DIRECTED**
to enter a **DECLARATORY JUDGMENT** in favor of Allstate declaring
that under insurance policy number 648550390, Allstate has no duty
to defend or indemnify McColly Realtors, Inc. and/or Ruth Lockhart
against claims asserted by Rosemary Purnell in case number 45D01-
1503-CT-50 in Lake Superior Court.

BACKGROUND

On October 12, 2013, Kennetha Purnell ("Kennetha"), her husband and two children died when carbon monoxide gas infiltrated the home they were leasing from a generator operating in the garage. Kennetha's mother, Rosemary Purnell ("Purnell"), filed a wrongful death suit against the homeowner. Purnell later amended her complaint ("Underlying Complaint") to include a wrongful death claim against McColly Realtors, Inc. and Ruth Lockhart (together, "Defendants"), asserting that the homeowner had contracted with Defendants for the purpose of leasing the home.

Defendants requested that Allstate defend and indemnify them against the Underlying Complaint pursuant to an Allstate insurance policy held by McColly Realtors, Inc. ("McColly"). Allstate agreed to defend the Defendants under a reservation of rights, and filed the instant declaratory judgment action against Defendants and Purnell.[1] Allstate now moves for summary judgment, asking the Court to find that the insurance policy does not provide coverage for the claim in the Underlying Complaint, and that Allstate has no duty to defend or indemnify the Defendants in that action. The Defendants oppose this motion and filed a cross motion for summary judgment. The motions have been fully briefed and are ripe for adjudication.

---

[1] The Court granted default judgment against Purnell and the Clerk entered judgment on October 5, 2016. (DE #20, #21.)

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citation omitted).

While the movant bears the initial burden of production to inform the district court why a trial is not necessary, these requirements "are not onerous" where the nonmoving party "bears the ultimate burden of persuasion on a particular issue." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). A party

may move for summary judgment based on either "affirmative evidence that negates an essential element of the nonmoving party's claim" or by "asserting that the nonmoving party's evidence [is] insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 1169 (citation and internal quotations omitted). A party opposing a properly supported summary judgment motion may not rely on allegations or denials in his own pleading, but rather, must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

"Interpretation of a written contract, including a contract of insurance, typically presents a question of law suitable for resolution on motions for summary judgment." *Royer v. USAA Cas. Ins. Co.,* 781 F. Supp. 2d 767, 770 (N.D. Ind. 2011) (citation omitted). "When the question presented is whether an insurance policy provides liability coverage for a particular claim or lawsuit, the central material facts are ordinarily the terms of the written contract and the contents of the plaintiff's allegations in the underlying litigation." *Id.* (citation omitted).

FACTS

The Court finds the following undisputed facts to be supported by admissible evidence in the record:[2]

The Underlying Complaint

Purnell, as administratrix of Kennetha's estate, filed a lawsuit against Madeline Chale ("Chale") in Lake County Superior Court entitled *Purnell v. Chale*, No. 45D01-1503-CT-50 ("Underlying Lawsuit"). Purnell's Second Amended Complaint ("Underlying Complaint") asserts claims against Chale and Defendants. The Underlying Complaint alleges that Chale was the owner of premises located in Merrillville, Indiana ("premises" or "property"). Count I alleges that as of October 1, 2013, Kennetha leased the property from Chale, and that Chale owed a duty to follow applicable law in leasing the premises, and a duty to warn of latent or concealed dangers, to the residents of the premises. It alleges that Chale negligently and/or recklessly failed to register the premises as a rental as required by law, thereby causing the premises to be leased without proper inspection. According to the Underlying Complaint, an inspection would have revealed that the property was not fit for habitation, including insufficient barrier protection against infiltration of harmful

---

[2] The parties also address minor issues of fact in their briefing on the motions for summary judgment. The Court finds that those issues are not material to ruling on the motions.

gases from the garage to the living quarters of the premises. Count I alleges that Chale's violation of law, failure to warn and/or concealment of a latent and dangerous condition wrongfully caused the deaths of Kennetha, her husband and two minor children (together, "Kennetha's family") on October 12, 2013, when carbon monoxide infiltrated the living quarters of the premises from a generator operating in the garage.

Count II asserts a similar wrongful death claim against McColly and Ruth Lockhart ("Lockhart"), who was allegedly working in her capacity as an agent and/or employee of McColly. (DE #1-1, Ex. A at ¶13.) Count II states in part:

- "Chale hired, contracted with and/or otherwise engaged McColly Real Estate by and through its agent and/or employee Lockhart for purposes of leasing the premises. . . . As a result, [Defendants] had a duty to follow applicable law, including local codes and/or ordinances, in leasing the premises, as well as a duty to warn of latent or concealed dangers to residents." (*Id.* at ¶¶15-16.)

- Defendants "negligently and/or recklessly failed to register the premises as a rental as required by applicable law, including local codes and/or ordinances." (*Id.*, ¶17.)

- Defendants' "violation of law . . . caused the property to be leased without proper inspection which would have revealed that it was not fit for habitation and/or was otherwise in violation of applicable law, including local codes and/or ordinances, including . . . insufficient barrier protection against infiltration of harmful gases such as carbon monoxide from the garage to the living quarters of the premises." (*Id.*, ¶18.)

Count II alleges that Defendants' violation of law, failure to warn, and/or concealment of a latent and dangerous condition wrongfully caused the deaths of Kennetha's family.

The Policy

Allstate issued Commercial Package Policy number 648550390 to McColly effective December 15, 2012 to December 15, 2013 ("Policy"). The Policy includes commercial general liability ("CGL") bodily injury and property damage coverage ("Coverage A"). Coverage A states in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

(DE #1-1 at 101.) Coverage A only applies if "[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence'. . . ." (*Id.*) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at 114.) The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id*. at 113.) The term "suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or

'personal and advertising injury' to which this insurance applies are alleged." (*Id*. at 115.)

The Policy includes personal and advertising injury liability coverage ("Coverage B"), which states in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(*Id*. at 106.) "Personal and advertising injury" is defined in part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (*Id*. at 114.)

The Policy also includes a Real Estate Agents or Brokers Errors or Omissions Exclusion ("Realtor E&O Exclusion"), which states that the Policy "does not apply to 'bodily injury,' 'property damage' or 'personal and advertising injury' arising out of any misrepresentation, error or omission by you or any real estate agent or broker who is either employed by you or performing work on your behalf in such capacity." (*Id*. at 132.)

Defendants requested that Allstate defend and indemnify them under the Policy against the Underlying Lawsuit. Allstate agreed to defend under a reservation of rights, and commenced this declaratory judgment action.

## Complaint for Declaratory Judgment and Additional Facts

Allstate's Complaint for Declaratory Judgment alleges three counts seeking declarations that: (1) Lockhart does not qualify as an insured under the Policy; (2) the Underlying Complaint does not allege an "occurrence" under the Policy; and (3) the Realtor E&O Exclusion applies to exclude coverage.[3] (DE #1.) The complaint attaches a contract between Chale and McColly for the lease or sale of Chale's property dated September 9, 2013 ("Listing Contract"). The Listing Contract provides that Chale appoints McColly as Chale's broker with the exclusive right to sell, exchange, or lease the property, and was executed by Chale, McColly, and Lockhart as "salesperson/agent." (DE #1-1 at 14.)

The Lake County Coroner's autopsy reports of Kennetha and her children state that the manner of death was "ACCIDENT," and the cause of death was carbon monoxide poisoning. (*See, e.g.,* DE #32 at 12, 66.)

---

[3] In the instant motions, the parties do not address the issue of whether Lockhart qualifies as an insured under the Policy.

In an April 2016 email regarding the Underlying Complaint, an Allstate Commercial Claims adjuster ("Allstate adjuster") stated in part:

> Allegations in the complaint: Failure to follow applicable law, including local codes and/or ordinances, in leasing a premises and listing it as rental property and failure to warn and/or concealment of a latent and dangerous condition, allegedly resulting in the death of 4 individuals by carbon monoxide poisoning. McColly is being sued for all damages attributable to Lockhart's actions through the doctrine of *respondeat superior*.

> Liability – at this time it is our understanding the local code and/or ordinances referenced in the complaint applies to the owner of the property, not to the real estate agent or broker. . . .

(DE #32-1 at 96-97.)

DISCUSSION

The parties do not dispute that Indiana law governs the coverage obligations and duties to defend arising from the Policy. In Indiana, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009) (citation omitted). In an insurance policy dispute under Indiana law, "[t]he insured is required to prove that its claims fall within the coverage provision of its policy, but the insurance provider bears the burden of proving specific exclusions or limitations to policy coverage." *Ind. Funeral Dirs. Ins. Tr. v. Trustmark Ins. Corp.,* 347 F.3d 652, 654 (7th Cir. 2003) (citation omitted). "Under

Indiana law, insurance contracts are governed by the same rules of construction as other contracts." *Id.* (citation omitted). "[C]lear and unambiguous language in an insurance policy should be given its plain and ordinary meaning, even if those terms limit an insurer's liability." *Everett Cash Mut. Ins. Co. v. Taylor,* 926 N.E.2d 1008, 1012 (Ind. 2010) (internal citation omitted). Where policy language is ambiguous, Indiana courts generally construe it strictly against the insurer and in favor of the insured. *Id.* "[A]n ambiguity does not exist simply because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms." *Empire Fire v. Frierson*, 49 N.E.3d 1075, 1079 (Ind. Ct. App. 2016) (citations omitted).

Allstate argues that it has no duty under the Policy to defend or indemnify Defendants for the claim made against them in the Underlying Complaint. An insurer's duty to defend is broader than its duty to indemnify. *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). Indiana courts "determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." *Id.* (citation omitted). "Typically, an insurer has a duty to defend its insured against suits alleging facts that might fall within the coverage." *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d

563, 566 (7th Cir. 1997). If the pleadings demonstrate that "a claim is clearly excluded under the policy, then no defense is required." *Newnam,* 871 N.E.2d at 401. "It is the nature of the claim, not its merit, which establishes the insurer's duty to defend." *Trisler v. Indiana Ins. Co.,* 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). "[A]n insurer who has no duty to defend has no duty to indemnify its insured either. Conversely, where there is a duty to defend, the duty to indemnify must await resolution of the underlying suits." *Pekin Ins. Co. v. Main St. Cons't., Inc.,* No. 106-CV-0961-TAB-DFH, 2007 WL 1597924, at *4 (S.D. Ind. June 1, 2007) (citing *United Nat. Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992)).

"Occurrence" under Coverage A

Allstate asserts that the Underlying Complaint does not allege an "occurrence" as required by Coverage A of the Policy. Coverage A provides coverage for damages for bodily injury, including death, caused by an occurrence. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (DE #1-1 at 114.) Defendants argue that because the term "accident" is not defined in the Policy, it should be construed against Allstate. But the Indiana Supreme Court has "reaffirmed that an accident means an unexpected happening without an intention or design." *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d

-12-

997, 1002 (Ind. 2009) (citing *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006)). Defendants maintain that the deaths of Kennetha's family constitute an "accident" under Coverage A, and thus, Coverage A applies to the Underlying Complaint. In support, they cite the Lake County Coroner's reports stating that the manner of their deaths was an "accident." Allstate does not dispute that the deaths were accidental.

Allstate argues that the claim alleged against Defendants is not based on an occurrence or accident covered by Coverage A, but rather, is based on a professional error or omission. "[A]lthough 'accident' is broadly construed," the Indiana Supreme Court has noted the "distinction between an 'occurrence' as the term is used in CGL policies, and claims based on 'commercial or professional conduct.'" *Id*. (citation omitted). "Claims based on negligent performance of commercial or professional services are ordinarily insured under 'errors and omissions' or malpractice policies." *Id*. While it is undisputed the deaths of Kennetha's family were accidental, "[l]ack of intentional wrongdoing does not convert every business error into an 'accident.'" *Id*. at 1001; *see U.S. Liab. Ins. Co. v. Parchman*, No. 1:11-CV-01244-TWP, 2013 WL 2600406, at *5 (S.D. Ind. June 11, 2013) (although the insured "did not intentionally commit wrongdoing, this failure does not convert his actions into an 'accident'").

Here, the Underlying Complaint alleges that Chale contracted with Defendants "for purposes of leasing the premises," and that "[a]s a result" of this contractual relationship, Defendants "had a duty to follow applicable law" in leasing the premises, and a duty to warn residents of latent or concealed dangers. (DE #1-1, Ex. A, ¶¶15, 16.) It alleges that Defendants "negligently and/or recklessly failed to register the premises as a rental property as required by applicable law," and that the violation of such law caused the property to be leased without proper inspection. (*Id.* ¶17; *see id.* ¶18.) Defendants' alleged "violation of the law and/or the absence of a proper inspection . . . wrongfully concealed a latent and dangerous condition," which allegedly led to the belief that a generator could be operated in the garage without risk of harm to the residents in the house, and allegedly caused the deaths of Kennetha's family. (*Id.* ¶¶19-20.)

The parties rely upon several Indiana court opinions that address whether a claim is based on an "occurrence" or "accident" for the purpose of determining insurance coverage. In *Erie Insurance Company v. American Painting Company*, American's employee burglarized and set fire to the home of its customer. 678 N.E.2d 844, 845 (Ind. Ct. App. 1997). The homeowner sued American, alleging that its negligent hiring and retention of the employee caused the property damage. American's insurer sought a declaration of no liability insurance coverage for those claims.

The policy defined "occurrence" as "an accident." *Id*. at 846. The court noted that "[i]n the context of insurance coverage, [Indiana courts] have held that an accident means 'an unexpected happening without an intention or design.'" *Id*. (citation omitted). The court held that even if American's actions of hiring and retaining the employee were proven to be careless and negligent, they "were intentional, not accidental." *Id*. (citation omitted). As such, the homeowner's "action against American did not arise from an 'accident' and, thus, was not the result of an 'occurrence'" as defined by the policy. *Id*.

Defendants attempt to distinguish *Erie* from the instant case by contrasting American's intentional conduct in hiring and retaining the employee with Defendants' lack of knowledge regarding Kennetha's family's use of the generator. This argument is unpersuasive. In both *Erie* and the instant matter, the insured's alleged liability is based on the insured's alleged conduct. American was allegedly liable based on its negligent hiring and retention of its employee; the Underlying Complaint alleges that Defendants are liable for negligently and/or recklessly failing in duties that arose as a result of their contract with Chale for purposes of leasing the property. In *Erie*, the court found that even if American's hiring or retention of the employee was proven to be negligent, it was not accidental. Here, Defendants do not assert that their alleged failure to perform the

alleged duties was an accident; rather, they maintain that such duties do not apply to them.

In *Auto-Owners Insurance Company v. Harvey*, the issue was whether an insurance policy provided coverage for the harm caused by the insured who had pushed his girlfriend, who slipped, fell into a river and drowned. 842 N.E.2d at 1281. The policy provided coverage for an "occurrence," which the policy defined as "an accident that results in bodily injury. . . ." *Id*. at 1283. The question was whether the push was an "accident" under the policy, because while the push was intentional, it possibly had unintended consequences. The Indiana Supreme Court found the policy language ambiguous and construed it against the insurer, holding that the term "occurrence" applied to the girlfriend's slip, fall, and drowning, and not to the insured's push. *Id*. at 1286. The court distinguished *Erie* and other cases as involving "whether 'occurrence' applies to circumstances *remote from instances of specific personal physical conduct*, but rather arising from claims based on commercial or professional conduct." *Id*. at 1284 (emphasis added); *see Parchman*, 2013 WL 2600406 at *5 (distinguishing *Harvey* because it "did not involve a commercial general liability policy, but a homeowner's insurance policy, and further included direct physical conduct with the deceased"). Here, there are no allegations that Defendants had any direct personal physical conduct with Kennetha's family. Rather,

Defendants' alleged liability is based on their contract with Chale, and the duties that allegedly arose as a result of that contract.

In *Tri-Etch, Inc. v. Cincinnati Insurance Company,* a robber had abducted a liquor store employee before the store closed at midnight, tied him to a tree, and beat him. 909 N.E.2d at 999. The store's security service, which was to call the store manager within thirty minutes if the alarm was not set at closing, failed to call the manager until after 3:00 a.m. *Id.* The employee was found alive, but later died from his injuries. *Id.* The employee's estate filed a wrongful death action alleging that the security service was negligent in failing to call the manager within thirty minutes. *Id.* In the related insurance coverage action, the Indiana Supreme Court held that the security service's failure was not an "occurrence" covered by the CGL and umbrella policies, but rather, was a professional "error or omission" analogous to lawyer malpractice. *Id.* at 1001.

> The CGL policy does not guarantee the quality of work or products of its insureds. To the extent Tri-Etch had a duty to [the employee], it arose from its contract with [his] employer. This may give rise to tort liability. *See* Restatement (Second) of Torts § 324A (1965). But it does not convert a failure to meet a standard of care under a contractually assumed duty into an "accident."

*Id.; see Allstate Ins. Co. v. Preferred Fin. Sols., Inc.,* 8 F. Supp. 3d 1039, 1050-51 (S.D. Ind. 2014) ("the essential point was that the claim was based on Tri-Etch's simple failure to do its

job as promised, a risk that's involved in every business relationship, but which is not an accident covered under a general liability insurance policy").

The Court finds *Tri-Etch* to be the relevant authority guiding its decision. Here, the Underlying Complaint alleges the Chale entered into a contract with Defendants to perform the service of leasing Chale's property. To the extent Defendants had duties to register the property as a rental and warn of latent dangers, they arose from Defendants' contract with Chale. Defendants' alleged negligence and/or recklessness in failing to perform those legal duties is "based on the failure of the insured, in his or her professional status, to comply with . . . the standard of care for that profession," which is the type of liability covered by errors and omissions insurance. *Id.* at 1001 (quoting 1 Couch on Insurance § 1:35*); see id.* at 1002 ("Claims based on negligent performance of commercial or professional services are ordinarily insured under 'errors and omissions' or malpractice policies."). The fact that the deaths of Kennetha's family were accidental does not alter the analysis because "[l]ack of intentional wrongdoing does not convert every business error into an 'accident.'" *Id.* at 1001. As in *Tri-Etch,* Defendants' alleged negligent performance of their commercial or professional services is not an accident, and for that reason it is not an "occurrence" covered by Coverage A. *See id.; Allstate,* 8 F. Supp. 3d at 1050 ("a business's failure to

perform its services in the manner that it had promised is an 'error or omission' but not by any stretch an 'accident'").

Defendants attempt to distinguish *Tri-Etch* by asserting that the Underlying Complaint only alleges the duties of Chale. A cursory review of the Underlying Complaint demonstrates otherwise: "As a result [of the contract between Chale and Defendants], Defendants McColly Real Estate and its agent and/or employee Lockhart had a duty to follow applicable law, including local codes and/or ordinances, in leasing the premises, as well as a duty to warn of latent or concealed dangers to residents." (DE #1-1, Ex. A at ¶16.) Defendants insist that the alleged duties do not apply to real estate agents or brokers. In support, they rely upon an Allstate adjuster's email which states in part that "at this time it is our understanding the local code and/or ordinances referenced in the complaint applies to the owner of the property, not to the real estate agent or broker." (DE #32-1 at 97.) Defendants maintain that the Allstate adjuster's investigation and opinion must be considered in determining the duty to defend. *See Newnam,* 871 N.E.2d at 401 (an insurer's duty to defend is based on the complaint allegations and "those facts known or ascertainable by the insurer after reasonable investigation"). According to Defendants, the Allstate adjustor's understanding that they "are being sued for owner breaches and responsibilities and not for broker or agent responsibilities" means that Defendants may

possibly be held liable for conduct "that is not a broker or agent error or omission." (DE #35 at 12.) But Defendants do not identify any claim under which they could be held liable for Chale's breaches and responsibilities. *See Trustmark,* 347 F.3d at 654 (the insured bears the burden to prove that claims fall within the coverage provision of its policy).

The sole claim against Defendants is based on their contractual relationship with Chale to lease the property, which allegedly resulted in legal duties to register the property as a rental and to warn residents of latent or concealed dangers. (*See* DE #1-1, Ex. A ¶16.) While the Allstate adjuster opines that these obligations do not apply to real estate agents or brokers, her opinion goes to the merits of the claim against Defendants. Indiana courts have held that the Court must consider "the nature of the claim, not its merit," in determining whether an insurer has a duty to defend an insured. *Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.,* 634 N.E.2d 1336, 1339 (Ind. Ct. App. 1993); *see Trisler,* 575 N.E.2d at 1023; *Home Fed. Sav. Bank v. Ticor Title Ins. Co.,* 695 F.3d 725, 731 (7th Cir. 2012) ("The duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim.") (applying Indiana law). Assuming the allegations in the Amended Complaint are proved true, Defendants failed in duties that arose from their contract with Chale for the purpose of leasing the property. *See Stroh Brewing*

*Co.*, 127 F.3d at 566 (stating that "there is essentially only one standard—that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach."). This claim alleges a professional error or omission, rather than an accident or occurrence under Coverage A.

<u>Coverage B</u>

Coverage B of the Policy provides that Allstate has the duty to defend the insured against any suit seeking personal and advertising injury damages. Coverage B provides coverage for bodily injury arising out of one or more enumerated offenses, including the following offense: "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (DE #1-1 at 114.) Defendants contend that Coverage B applies to the claim against them based on this invasion offense. In support, they cite the Underlying Complaint's allegations that "Kennetha leased the premises from Defendant Chale" (DE #1-1, Ex. A ¶3), the property "was not fit for habitation" (*id.*, ¶6, ¶18), and "carbon monoxide gas was allowed to infiltrate the living quarters of the premises from a generator operating in the garage" (*id.*, ¶8, ¶20). They do not cite any allegations that Defendant committed wrongful entry or invasion of the property.

Allstate maintains that Coverage B does not apply because Defendants rely upon an offense that must be "committed by or on behalf of the owner, landlord, or lessor." (DE #1-1 at 114.) "The 'committed by' language makes clear that the policy coverage extends only to wrongful entry, eviction, or invasion committed by or on behalf of the owner of the land." *Cont'l Cas. Co. v. Sycamore Springs Homeowners Ass'n, Inc.,* No. 1:09-CV-0007-LMJ-DML, 2010 WL 3522955, at *7 (S.D. Ind. Aug. 31, 2010). Here, the Underlying Complaint does not allege that Defendants are an owner, landlord or lessor of the property; rather, Chale is indisputably the owner and lessor of the property.

Defendants respond that the invasion of carbon monoxide was committed on behalf of the property owner, *i.e.,* Chale. In support, they cite the Allstate adjuster's opinion that the local code and/or ordinances referenced in the Underlying Complaint apply "to the owner of the property, not to the real estate agent or broker." (DE #32-1 at 97.) While Defendants insist that the Allstate adjuster's opinion constitutes an admission by Allstate, they do not explain how the adjuster's opinion affects Allstate's duty to defend Defendants under Coverage B, nor do they cite any legal authority supporting their position.[4] Moreover, they do not

_____

[4] The Court notes that Defendants gave their argument regarding Coverage B little attention, addressing the issue in less than a page in each of their briefs. (*See* DE #31 at 20; DE #35 at 7.)

explain how an alleged invasion of the property committed by or on behalf of Chale supports such a claim against Defendants. *See generally Pekin Ins. Co. v. Barber*, No. 1:09-CV-0521-TAB-TWP, 2011 WL 1258063, at *7 (S.D. Ind. Mar. 31, 2011) (holding lawsuits did not allege "the personal injury offense of 'wrongful entry'" under a similar coverage provision where the insured "was not the owner, landlord or lessor of the Real Estate"). Because the Underlying Complaint does not allege a wrongful entry or invasion of property committed by or on behalf of Defendants as owners, landlords or lessors of the property, Coverage B does not apply here.

The Court holds that the claim against Defendants in the Underlying Complaint is not covered by Coverage A or Coverage B of the Policy, and therefore, need not address whether coverage is excluded by the Realtor E&O Exclusion. The Court further holds that under the Policy, Allstate has no duty to defend the claim against Defendants in the Underlying Complaint. Because Allstate has no duty to defend Defendants, it also has no duty to indemnify Defendants. *See Pekin,* 2007 WL 1597924, at *4.

CONCLUSION

For the reasons set forth above, Allstate's motion for summary judgment (DE #26) is **GRANTED.** Defendants' cross motion for summary judgment (DE #30) is **DENIED.** The Clerk of the Court is **DIRECTED** to enter a **DECLARATORY JUDGMENT** in favor of Allstate declaring that under insurance policy number 648550390, Allstate has no duty

to defend or indemnify McColly Realtors, Inc. and/or Ruth Lockhart against claims asserted by Rosemary Purnell in case number 45D01-1503-CT-50 in Lake Superior Court.

DATED:  October 31, 2017    /s/ RUDY LOZANO, Judge
                            United States District Court